George McGonigle *v.* Agricultural Insurance Co. of Watertown, New York, Appellant.

*Insurance—Fire insurance—Contract—Settlement by adjuster.*

A house and personal property were insured against fire by a policy which provided that it should become void if the property be or become incumbered beyond $1,500, and while the policy was in force the house became incumbered to the amount of $3,000. The policy further provided that no officer or agent of the company had power to waive any stipulation of the policy, unless such waiver be written upon or attached to said policy. After a loss of the property by fire, the insured agreed to deduct a portion of his loss on personal property by accepting the figures of the adjuster of the company instead of his own; and it was then agreed between the insured and the adjuster, said adjuster having full knowledge of the amount of the incumbrances, to compromise and settle the loss, and appoint appraisers to adjust the loss upon the house, and whatever damage the insured had suffered by the burning of his house as fixed by the appraisers, should be added to the amount of damage agreed upon to the personal property.

*Held*, that in such case the company was liable, and the action was properly brought on the agreement between the adjuster and insured.

Argued March 18, 1895. Appeal, No. 414, Jan. T., 1894, by defendant, from judgment of C. P. Susquehanna Co., April T., 1893, No. 149, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Assumpsit to recover for a loss occasioned by fire. Before SEARLE, P. J.

Plaintiff's statement was in part as follows:

"Plaintiff's claim in the above suit is founded upon the assumption, promise, undertaking and agreement of the said defendant to pay him the sum of $1,187.38, with interest thereon from the first day of November, 1892.

" On the 20th day of October, 1888, the plaintiff made an agreement or contract with the defendant to insure certain property of the plaintiff against loss or damage by fire, and the plaintiff then paid the defendant, or the agent of the defendant, the sum of $37.87 in money for the undertaking on the part of the said defendant to insure him on certain of his property against loss by fire. . . .

" By the destruction of the dwelling house of the plaintiff, in the said policy of the said company named and insured for the sum of seven hundred dollars; and by the loss of the household goods and wearing apparel and family provisions and household furniture, the said plaintiff suffered a loss of two thousand dollars and more, all of which property destroyed by fire on the 14th day of August, 1892, was named in the said policy and was insured in the said defendant company in and by the policy.

" But notwithstanding the great loss so suffered by the said plaintiff, all of which was fully known to the said company and was examined by the said company through and by its own agents, the said plaintiff and the said defendant agreed, on the first day of September, 1892, upon a settlement of said loss upon the terms that the said company then and there promised and agreed to pay to him the sum of $1,187.38; and the said plaintiff then and there agreed to accept the said sum in settlement of the said loss by him sustained under the said policy, and agreed to settle and accept the said sum and discharge the said defendant company from further liability on account thereof, and the said defendant promised and agreed when such settlement was made to pay the said sum to the said plaintiff at once."

The court charged in part as follows:

" On the 21st day of August, 1892, during the life of this policy, this house and some of its contents were destroyed by fire. The uncontradicted testimony shows that immediately after the fire Mr. McGonigle notified the local agent, Elijah Carpenter, of the fire, and that on the 31st day of August, 1892, or about that time, a man by the name of H. D. Cornell, claiming to be the agent and adjuster of the company, came to the house of Mr. McGonigle, some distance from where his house was burned. That at that time they made out what the.

parties claimed to be proofs of loss, and agreed upon an arbitration as to the actual damages that occurred to McGonigle by reason of the burning of the house. So far the evidence is undisputed.

" The plaintiff has brought this action claiming that at the time this adjuster of the defendant company was there, they made a settlement of the loss which occurred to the personal property and the house. As we recollect the evidence, Mr. McGonigle claimed that the actual loss upon the personal property was upwards of $500, as he had made it up in a statement, and that after giving the items of the loss to the adjuster, the adjuster claimed that the amount was too high, and made up another statement himself which amounted to $487.33. [That there was some controversy between Mr. McGonigle and Mr. Cornell, the adjuster, as to the amount, but that they finally agreed that if McGonigle would accept the figures of the adjuster upon the personal property they would go on and appoint appraisers for the real estate, and whatever damage the appraisers found that the plaintiff had suffered by reason of the burning of his house should be added to the amount of the damage to the personal property as fixed by the adjuster, and that the company would immediately pay the amount.] [5] The defendant claims that no such agreement was made. Mr. Cornell testifies that all he did was to make a statement of the amount of the different items of the loss on the personal property and make the arrangements for the arbitration of the amount of the damage to the house; but that he made no agreement whatever by which there was a compromise or settlement of any conflicting claims.

" By the terms of the policy which was issued to the plaintiff in this case, and accepted by him, it was agreed that the entire policy should become void if the property, real or personal, covered by this policy, or any part thereof, be or become incumbered by a mortgage, trust deed, judgment or otherwise. But the policy also contains a written statement that $1,500 incumbrance is permitted.

" There is also the following clause at the close of the policy:

" ' This policy is made and accepted subject to the foregoing stipulations and conditions, and no officer, agent, or representa-

tive of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement, indorsed hereon or added hereto, and as to such provisions and conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provision or condition unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting insurance under this policy exist or be claimed by the insured unless so written or attached.'

" The plaintiff accepted this policy of insurance with all these conditions attached, and by the terms of the policy he is bound by these conditions. It appears in evidence that there was during the time that this policy was in force, and at the time of the fire, a mortgage against this property of upwards of $3,000. This mortgage, as it appears by the testimony, was originally a little more than $1,500. In October, 1891, this mortgage was figured up, the interest added, the payments which had been made upon it deducted, and a new mortgage given for the gross amount then due. Taking this testimony that is uncontradicted, there must have been at the time of issuing this policy an incumbrance upon the property of more than the amount allowed in the policy—allowed by its terms, which of itself would defeat a recovery upon this policy, and would be a good defense to a suit brought on it.

" The defendant claims that they have not waived that provision in the policy, and that the agent or adjuster that they sent there had no right or authority to waive it, and that therefore there can be no recovery in this case. They claim that at the time of this alleged settlement the defendant, through its agent, having ascertained for the first time that this incumbrance existed to an amount more than was allowed by the terms of this policy, thereby rendering it uncollectible —that Mr. Cornell expressly notified the plaintiff that he had no authority from the company to waive this provision in the policy, but agreed that he would do what he could to get the company to waive it.

" [On the other hand, the plaintiff claims that with full knowledge of this incumbrance and its amount, the agent of the company expressly agreed to make this compromise and

settlement; that they did make it, and that by reason of such compromise the plaintiff deducted a portion of the loss which he claimed to have sustained by reason of the fire. [6]

" [As we understand the law and the evidence in this case it is a question of fact for you to determine, first, whether Mr. Cornell came there as the agent of the defendant company, authorized to settle that loss and arrange the amount that should be paid by the company. If he was so authorized then he had a right to waive these provisions of the policy in relation to incumbrance by a settlement agreeing upon a specific sum to be paid by the company. If he, having a full knowledge of the stipulations, and having authority to make a settlement of that kind whereby the plaintiff released some portion of his claim, that agreement would be binding upon the company, and a suit could be instituted and maintained upon that agreement and a recovery had thereon. But if at the time when the plaintiff claimed that Mr. Cornell made this agreement with him, he did not in fact make it, but informed the plaintiff that he had no power or authority to make it, then your verdict should be for the defendant.

" But if on the other hand, you find that he did have power and authority to make such a settlement, and that he did make it, and that thereby the plaintiff released a portion of his claim, and the agent agreed with him that the company would immediately pay the balance, then the plaintiff would be entitled to recover in this action the amount so agreed upon, with interest upon it from the time it was agreed to be paid. As we view it this is entirely a question of fact for you, but the burden of proof is upon the plaintiff to establish this contract by the weight of evidence.] [7]

" [By the terms of the policy the plaintiff is entitled only to recover two thirds of the amount of the actual loss upon the real estate. There was no waiver of that provision in the terms of that written agreement to refer to arbitrators the amount of the damage on the real estate. Therefore, if this was an action upon the policy itself the plaintiff could only recover two thirds of the amount of the award of the arbitrators as to the damage upon his real estate. But this is not an action upon the policy. It is an action upon the verbal contract which the plaintiff alleges he made with this defendant company, by the terms of

which he claims and alleges that he was to be paid a certain amount for the personal property and the full amount of the award which the appraisers should make on the real estate. If you find that there was such a verbal contract made, you must also find from the evidence what the terms of that contract were. If you find the terms as testified and claimed by the plaintiff then you could find for the plaintiff the full amount of the award of the arbitrators.] " [8]

The defendant's counsel has asked me to instruct you " [That under all the evidence in this case your verdict must be for the defendant. *Answer*: We refuse to so charge you, and leave the question to you as we have stated.] " [10]

Verdict and judgment for plaintiff for $1,253.83. Defendant appealed.

*Errors assigned*, among others, were (5–8, 10) above instructions, quoting them.

*Charles L. Hawley, A. H. Sawyer* with him, for appellant, cited: Beatty v. Ins Co., 66 Pa. 9; Ins. Co. v. Dunham, 117 Pa. 473; National Ins. Co. v. Brown, 128 Pa. 386.

*A. H. McCollum*, of *McCollum & Smith, L. P. Wedeman* with him, for appellee, cited: Snowden v. Kittanning Ins. Co., 122 Pa. 502; Wagner v. Dwelling House Ins. Co., 143 Pa. 338; McFarland v. Kittanning Ins. Co., 134 Pa. 590; Gould v. Dwelling House Ins. Co., 134 Pa. 570.

PER CURIAM, April 8, 1895:

This suit was brought, not on the policy of insurance issued by defendant company to plaintiff but upon the agreement, alleged to have been made after the fire, between the company through its adjuster and agent, H. D. Cornell, and the plaintiff, fixing the amount of loss on the personal property and appointing appraisers to determine the amount of damage to the real estate, etc. The testimony tended to show that, with full knowledge of all the facts and circumstances, the agreement was made substantially as alleged. The submission to appraisers named therein was not only signed by the parties,—by plaintiff in person and by " H. D. Cornell for Co.," but the appraisers thus

chosen proceeded to appraise the damage to the real estate, and awarded therefor the sum of six hundred and seventy-five dollars. In view of this and other testimony, to which reference might be made, it is very evident that the case depended on questions of fact which were for the exclusive determination of the jury. These questions were fairly submitted in a clear and able charge to which no just exception can be taken. The result was a verdict in favor of the plaintiff; and it was fully warranted by the law and the evidence.

It is unnecessary to consider the specifications of error in detail. There is nothing in the record that would justify us in sustaining any of them. The case was well and carefully tried, and the judgment should not be disturbed.

Judgment affirmed.